INHABITANTS OF BREWER *versus* INHABITANTS OF EDDINGTON.

The latter clause of the fourth mode of gaining a settlement in a town, (R. S. of 1841, c. 32, § 1,) provides, that "when any new town shall be incorporated, composed of a part of one or more old incorporated towns," such inhabitant as "shall *actually dwell* and *have his home* within the bounds of such new town at the time of its incorporation, shall have the same rights in such new town in relation to settlement" as he would have had in the old : — *Held*, that the question of settlement in the new town depends upon the fact of an *actual home*, and not upon a *temporary residence*.

The settlement of a person, supported by the town as a pauper, at its poor house, situated within the limits of a new town incorporated out of the old one, does not become fixed in the new town, from the fact of his thus living therein.

A poor house cannot be regarded as having the characteristics of a statute home.

A settlement acquired in any town prior to its division, adheres to that town afterward, unless the facts existing at the time of division are such as to transfer the settlement to another town.

D., being without family, and having no legal settlement in this State, commenced work for A. as a laborer on his farm in the town of B. He continued thus with A. for the space of six years, when A. would keep him no longer ; and, being without property, he was supported during the ten succeeding years by the town, at its poor house. A portion of B., including the site of its poor house, but not including the residence of A., was then incorporated into a new town. Subsequently another portion of B., including the residence of A., was annexed to E. : — *Held*, that the pauper by living in the poor house, did not have such a home in the new town as to fix his settlement therein ; and that he did not actually dwell and have his home in that part of B. which was annexed to E. in any such sense as to transfer his settlement to that town. It therefore remained in B.

ON REPORT from *Nisi Prius.*

ASSUMPSIT for supplies furnished by the plaintiff town to one Day, a pauper, who is alleged to have his legal settle-

ment in defendant town. The general issue was pleaded. The proper notices and replies were admitted to have been given, there being no question made except as to the settlement of the pauper. The following facts were agreed.

The pauper, having no legal settlement in the State, came into Brewer in about the year 1838, and lived and made his home at one Dwelley's in that part of the town which is still Brewer, for about eighteen months, when he left and went to live and make his home in the family of one Austin in said town, where he so lived for six years and eight months more; at the end of which time Austin refused to keep him any longer. He then fell into want in Brewer in the year 1845, and the town of Brewer commenced supporting him as a pauper, and have supported him as such ever since. For the first eight weeks they employed said Austin to board him at one dollar per week; after which time he was supported by the town on the town farm.

The pauper has always been a single man, and has never possessed any property, real or personal; and during the time of his living in the families of Austin and Dwelley he worked for his support.

On the 13th of April, 1852, the town of Brewer was divided, and the eastern part of it incorporated into the town of Holden. At the time of this division, the pauper was supported by the town in that part of Brewer which became Holden, being in the poor house on the town farm, which poor house fell in Holden at said division. On the 16th of March, 1855, a portion of the town of Brewer was annexed to Eddington. Said Austin's house was on that part so annexed to Eddington, but said Dwelley's on that part which still remains as Brewer.

The plaintiff town contends that upon such annexation the burden of supporting the pauper became a charge upon defendant town, and the damages sued for are such as have accrued for his support since said annexation.

If the pauper has his legal settlement in Eddington, the defendants are to be defaulted; otherwise, judgment is to be rendered for defendant town.

*J. A. Peters,* for plaintiffs.

In this case, we contend, that the authority of *Mt. Desert,* v. *Seaville,* in 20 Maine, cannot be carried so far as to apply; that, therefore, the pauper cannot belong to Holden.

We contend that the pauper must belong to Eddington, under the mode first named in Art. 4, § 1, c. 32, R. S.

The annexation of part of Brewer to Eddington was, in effect, the same thing as a division of the town. 1 Maine, 130; 16 Maine, 69; 13 Maine, 299.

The pauper had a legal settlement in Brewer, and in that part of it which, in the division, fell to Eddington; and his last dwelling place fell there on said division; and he gained no settlement elsewhere. He comes literally within the mode named. His own residence was in Brewer, now Eddington. Holden poor house was the town's residence for him. He had no intention about it. He was in Holden a mere boarder, being there for a merely temporary purpose, having no control of himself more than a slave or a *non compos mentis.*

Here are two divisions of Brewer, one of them becomes Holden, and the other Eddington. Upon one of them he gained a settlement and lived till he became a pauper; and upon the other he has lived ever since he was a pauper. It would seem he must belong to one or the other — to Holden or Eddington, or else they take our territory and leave the paupers.

That he would fall upon Eddington rather than Holden, I would cite *Smithfield* v. *Belgrade,* 19 Maine, 387; *St. George* v. *Deer Isle,* 3 Maine, 390.

*A. W. Paine,* for defendants.

The pauper Day gained a settlement in Brewer by five years residence prior to the year 1845, when he fell into want. During the latter portion of the time he lived with Austin — the former portion with one Dwelley.

During all the time he was a single man, having no family and no property, working for his living. He had, then, no claim upon any one for a support; nor any right, either legal or moral, to claim a home at any place in town. He was a

cosmopolite, living in fact upon the charity of those who were kind enough to grant it, but who had a right at any time, without a moment's notice, to withdraw that charitable support from him. In the course of the year 1845, Mr. Austin, upon whose farm he had lived for six years, withdrew his support, as he had a most perfect right to do. Thus being left without support he fell of course into want.

The whole town then became his supporter, and he had no other home than that which the town might provide. Such a home the town of Brewer did provide, and have continued since to provide. He was the pauper of the whole town and not that of any particular portion of it.

While thus taken care of by the town, and thus furnished with a home, after ten years of pauperism, a small portion of Brewer is set off and annexed to the town of Eddington. The question arises under this statement, to whom the support of the pauper belongs.

He was a pauper of Brewer, and to that town he belongs, until he acquires a new settlement in some other town.

The only question arising is, whether by reason of the annexation the pauper's settlement was transferred to Eddington. If not, then, judgment is to be rendered for defendants.

In coming to a decision upon this point, it matters not in what part of the town the pauper gained his settlement. *Lexington* v. *Burlington*, 19 Pick. 426.

The whole matter is settled by the "fourth" clause of § 1 of the Pauper Act. R. S., c. 32.

This provides for the case directly, in the last provision of the clause cited.

The "annexation" has the effect of a new incorporation from an old town or towns.

The pauper was legally settled in Brewer.

In order, however, that his settlement should be transferred to Eddington it is necessary, in addition to the foregoing facts, that the pauper should actually dwell and have his home upon the part annexed, at the time of the annexation. *Southbridge* v. *Charlton*, 15 Mass. 248; *Fitchburg* v. *West-*

*minster*, 1 Pick. 146; *New Portland* v. *New Vineyard*, 16 Maine, 69; *Hallowell* v. *Bowdoinham*, 1 Greenl. 129; *New Portland* v. *Rumford*, 13 Maine, 299; *Smithfield* v. *Belgrade*, 19 Maine, 390.

What reason there can be, under the circumstances, to allege of the pauper, that, at the time of the annexation, "he was actually dwelling and having his home upon the territory annexed," it is very difficult to conceive.

Even if his whole pauper life is ignored, and he placed back to the moment of its commencement, he is then found not having a home there, but he is at most found on the territory to be sure, but not with any home there or any right to a home.

The Legislature and the courts seem to place particular stress upon this dwelling at the time on the territory, by using the word "actually." All implied dwellings seem thus put out of question. No inferential homes are to be looked for.

The case of *Mt. Desert* v. *Seaville*, 20 Maine, 341, is full authority for us.

How far the Court may go to overrule the case I do not know.

There is no doubt that it should be overruled, so far as it is supposed to sanction the doctrine that the pauper's residence is one that can give a new settlement, or be the basis of a new settlement.

Whether such a doctrine is sanctioned by that case, is very doubtful. The opposite is very distinctly affirmed in Stevens' case, in *Smithfield* v. *Belgrade*, 19 Maine, 390, and 16 Maine, 137; and I do not understand that the two cases conflict or were even intended to.

But though a pauper residence may not be such as to give a new settlement, yet it does not follow by any means, that it can be so completely ignored as to give effect to a previous state of facts, to be combined with new facts, the result of both which shall give a new settlement.

Because poison will not support life, it does not follow that life will exist for the reason that poison is absent.

The absence of a negative, does not necessarily imply the presence of a positive.

If we would ignore the ten years of this pauper's life, and thus bring him back to 1845, we should in all justice take things as we then find them, and not combine these facts with new facts transpiring in 1855, and by the combination get up facts to change the settlement.

It seems a great injustice, that while time is thus annihilated on the one side, it should not be equally so on the other.

And, in a legal view, every act should be governed and judged by the contemporary law.

To apply the principle to this case. Here are two facts — one, that the pauper once had a home at Austin's — another, that a part of Brewer is annexed to Eddington. The statute provides that when the latter fact exists in actual connection with the former, the result follows that the pauper belongs to Eddington. Now is it just or legal to retain the latter fact as an actual one, and then make the other fact an actual one of the same day, by resorting to a legal fiction whereby to annihilate ten years of time ?

Again; it is a well settled principle of pauper law, that a man may be regarded as having a home in any particular town, though there may be no place in that town where he can claim a right to stay or even to stop. *Parsonsfield* v. *Perkins*, 2 Greenl. 411; *Boothbay* v. *Wiscasset*, 3 Greenl. 354.

Such was the pauper Day's case. His home was Brewer. For want of a more definite one, he applied to Brewer for support, and they rendered him the support he asked.

Had he any other ? In other words, had he any home at Austin's from which he may be regarded as a temporary absentee during the ten years of his pauper life ? If not, he certainly can in no sense be said to be an actual dweller there.

The strong language used in the statute is worthy of note. The dwelling must not only be "actual," but he must "dwell and have his home."

And here arises the particular point which is relied upon as decisive of the case, viz. : —

That the pauper, in order to acquire a settlement in Eddington, by the annexation, must, at the time of the annexation, have had his home and dwelling upon the annexed tract; and this cannot be concluded from any state of facts existing at any previous time. Such state of facts may be evidence, but not such evidence as will conclude the party on either side.

The question, then, depends upon this: whether, on the 16th day of March, 1855, Day had his home at Austin's. If not, then he is not annexed to Eddington. The only fact to establish the affirmative, consists in his having had his home there ten years before. But that home had been taken away from him, and he had been rightfully rejected from it. He had, then, ceased to have a home there before he became a pauper, and there is no pretence that since that time Austin has done aught to re-establish his home at his house. His having been turned off, and not otherwise having any rights there, his home could not by any stretch of language be said to be there in 1855.

A home, or dwelling-place, does not necessarily continue until another is gained. A man may break up his home and become a wanderer, and there will be an end of his dwelling-place, as effectually as if he were to gain a home in another place. *Jefferson* v. *Washington*, 19 Maine, 302; *Exeter* v. *Brighton*, 15 Maine, 58; *Phillips* v. *Kingfield*, 19 Maine, 381.

In *Jefferson* v. *Washington*, 19 Maine, 301, the Court say, "when the Legislature speak of dwelling-place and home as being requisite to establish a settlement, it cannot mean to use these terms in a vague and indeterminate sense. Something specific was in contemplation. It was intended to define so that it could not be misunderstood, and so that it should be obvious to the common sense of every man, what should constitute a settlement. Constructive dwelling-place and home, if there be any such, could not have been in contemplation. If a man actually has a home or dwelling-place, all his fellow-townsmen can at once see and know it."

In *Turner* v. *Buckfield*, 3 Greenl. 231, the Court say, "by

dwelling and having his home, the Legislature meant some permanent abode," &c.

In *Wayne* v. *Greene,* 21 Maine, 361, the Court say, "residence and change of place are facts which are obvious."

MAY, J.— On the 13th day of April, 1852, the easterly part of the town of Brewer was incorporated into a new town by the name of Holden; and, upon the facts stated in the case, it is very clear, that the pauper, whose settlement is in controversy, had, at and before the time of this division, acquired a legal settlement in Brewer, by more than five years continued residence in that part of the town which still remains Brewer. The Act incorporating Holden contains no provisions with reference to the settlement or support of the paupers then upon the town of Brewer, or for the adjustment of any questions relating to such settlement. *Holden* v. *Brewer,* 38 Maine, 472. In this particular the rights of the old and new town are left to depend wholly upon the general law.

The pauper, for whose support this action is brought, at the time of the division, and for several years before, was, and had been supported by the town of Brewer at their poor house on the town farm, which upon the division fell into the territory which became and now is the town of Holden. The pauper having gained a settlement in the town of Brewer before its division, will retain such settlement until a new one is acquired.

It may be well first to inquire whether, under the circumstances of this case, the pauper gained a new settlement in Holden, by reason of the Act incorporating that town, under any of the provisions of the general pauper law then in force. If he did, the plaintiff cannot recover. Such settlement can have been gained only under that provision of the Revised Statutes, which is contained in the latter clause of the fourth mode in § 1, c. 32, by which it is provided, that "when any new town shall be incorporated, composed of a part of one or more old incorporated towns, every person legally settled

in any town of which such new town is wholly or partly so composed, or who has begun to acquire a settlement therein, *and who shall actually dwell and have his home* within the bounds of such new town *at the time of its incorporation,* shall have the same rights in such new town in relation to settlement, whether incipient or absolute, as he would otherwise have had, in the old town where he dwelt." Under this provision all those persons, who at the time of the division *actually dwelt and had their homes* in that part of the old town which became incorporated into the new, and who had their legal settlement in the old town, as it existed before its division, acquired a new settlement in the new town; whilst all other persons continued to have their settlement in the old town. The question of settlement in the new town depends, therefore, upon the fact of an *actual* home, and not upon a *temporary* residence within its limits at the time of its incorporation.

In the case now under consideration, Day, the pauper, appears to have had his last voluntary home at Austin's, in that part of Brewer now Eddington, unless his residence at the poor house in Holden, where he was supported at the time of the incorporation of that town, can properly be regarded, within the meaning of the provision of the statute just cited, as his actual home. His residence there at the poor house, we think, cannot properly be regarded as possessing the characteristics of a statute home. It is true, that he seems to have had no right or inducement to return to his former residence. His home there was broken up, and ceased, by the refusal of Austin to keep him any longer. He was a single man, and without any means or property for his support, having, so far as the case discloses, no earthly object to attach him any more to one place than to another. His residence at the poor house was a matter of necessity. He must be regarded as being there neither *animo manendi*, nor *animo revertendi*. He was subject to removal at any time, not at his own will, but at the option and discretion of others. The

town, or its overseers of the poor, might remove him at pleasure. His supplies were all furnished by the town. We are of opinion that such a residence does not constitute a home, within the meaning of the statute. An opposite construction of the statute would fix the settlement of all the paupers who happened to be residing at the common poor house at the time of the division of any town, upon that town in which the poor house might happen to be, whilst the construction which is adopted, leaves them to fall into the old or new town, as their actual homes at the time of the division, if they have any, may require. Such a construction is more equitable and humane.

It is said that such a construction of the statute is in conflict with the case of *Mount Desert* v. *Seaville,* 20 Maine, 341. But that case, though somewhat similar, is not like the present. There, the paupers did not reside, *as such,* in the new incorporated town, at the time of the division of the town of Mount Desert. It is true they had acquired a settlement in the old town, by residing many years in that part of it which was afterwards incorporated into the town of Seaville. If the paupers had acquired their settlement in that part of Mount Desert which remained, after the incorporation of Seaville, and had been at the time of such incorporation, resident as paupers for the mere purpose of support within the new town, then the case would have been like the present.

The question, whether the home which the paupers in that case had, prior to their falling into distress, some eleven years before, and which, by the division of Mount Desert, fell into the new town of Seaville, continued to exist at the time of its incorporation, does not seem to have been very fully considered by the Court. It was sufficient, that such home did not exist *at the time of the incorporation,* to prevent the paupers from gaining a new settlement thereby in the new town of Seaville. The question, whether such a residence as the paupers had in that part of Mt. Desert which remained, would constitute a home within the meaning of the statute, was not

discussed at all.  So far from it, the opinion in that case dis-. tinctly asserts that it is not material under what circumstances they resided there.  It is true, the Court must have found, under the circumstances of that case, that the paupers did not actually dwell and have their homes in the town of Seaville, at the time of its incorporation; but they may have done so, because they were satisfied that their old homes had been broken up and discontinued in that case as in this, rather than because the paupers had established a new one in that territory which remained as Mt. Desert.  That case, therefore, can properly be regarded as going no further than to decide, that a settlement, acquired in any town prior to its division, adheres to the old town, unless the facts existing at the time of the division are such as to transfer such settlement to the newly incorporated town; and that the facts necessary to transfer such settlement did not exist in that particular case.

In the present case, it appears that the pauper, after his removal from Austin's, had no home remaining where it was before he fell into distress and went to the poor house; such home having, as we have seen, been broken up and lost.  But his settlement was in the plaintiff town at the time of its division; and, in our judgment, he did not, by reason of his removal and residence at the poor house, there dwell and have his home in that part of said town which was incorporated into Holden, in any such sense as to gain a new settlement in that town for that reason.  His settlement, therefore, remained in Brewer, and was there March 16, 1855, when that portion of the town in which he gained his settlement was annexed by an Act of the Legislature to the defendant town.

It does not appear, from any facts in the case, that the pauper, at the time of the annexation of a part of the town of Brewer to Eddington, actually dwelt and had his home, in any sense, upon that part of the town of Brewer which was so annexed.  His home, then, had ceased to exist, when he went to the poor house in 1845.  It does not appear that he ever returned to reside there afterwards even as a pauper.  Under

such circumstances, his settlement still remained in the town of Brewer. *Starks* v. *New Sharon*, 39 Maine, 368.

*Plaintiffs nonsuit.*

TENNEY, C. J., and HATHAWAY, J., concurred in the result. GOODENOW, J., concurred.