# The Town of Freeport

*v.*

# The Board of Supervisors of Stephenson County.

1. CORPORATIONS — *counties and towns.* Counties and towns, as municipal corporations, are under the legislative control, and the law governing them may be changed according to the legislative will.

2. PAUPERS — *liability of towns and counties for their support.* Under the act of the general assembly, in reference to paupers in Stephenson county, each town in the county is rendered liable for the support of their resident poor. And persons who were residents of a town and had been sent to the poor farm before the passage of that law did not thereby lose their residence or cease to have it in the town from which they were sent, or become residents of the town in which the poor-house was situated.

3. SAME — *residence.* As a general rule, persons under legal disability or restraint, persons of a non-sane memory, or persons in want of freedom, are incapable of losing or gaining a residence by acting under the control of others. Without the intent, the residence cannot be changed, and a pauper maintained at the poor farm is not an exception to the rule.

4. SAME — *division of a town.* By the division of a town, or the annexation of a portion of one to another, the pauper of the portion annexed does not lose his previous settlement or residence at the place where he had it when he became a public charge.

WRIT OF ERROR to the Circuit Court of Stephenson county; the Hon. BENJ. R. SHELDON, Judge, presiding.

This was an action of assumpsit brought by the Board of Supervisors of Stephenson county, to the April Term, 1864, of the Circuit Court, against the town of Freeport. The declaration contained a count for goods, wares and merchandise, and a count for the board and lodging of a number of persons who were poor, and a legal charge to defendant as paupers, and the usual money counts. The plea of the general issue was filed. A trial was had at the return term, by the court, by consent the intervention of a jury having been waived, on an agreement of the facts in the case which appears in the opinion of the court.

The issue was found for plaintiffs, and a motion for a new trial was entered, which the court overruled, and rendered judgment for $1,274.05, to reverse which defendants prosecute this writ of error.

Messrs. Bailey & Brawley, for the plaintiffs in error.

Messrs. Burchard, Barton & Barnum, for the defendants in error.

Mr. Chief Justice Walker delivered the opinion of the Court:

This was an action of assumpsit, brought by the Board of Supervisors of Stephenson county against the town of Freeport, to recover for the support of five paupers, with which, it is urged, the town is chargeable. The declaration contained the usual common counts. The general issue was filed, and the cause was submitted to the court for trial, by consent without a jury, on this agreed statement of facts:

"That an act entitled  An act in relation to the poor of Stephenson county,  approved February 18, 1861, was accepted by the electors of said county according to the provisions of the third section of said act, and that the next annual meeting of the board of supervisors of said county of Stephenson thereafter was held on the second Monday of September, A. D. 1861.

That Grant Ryan, John Davis, Christian Bergart, Frederick Hetty and Robert Kennedy, and each of them, were paupers in the county poor-house of said county at the time of the passage of said act, and had been at said poor-house, and supported therein by said county, for at least two years preceding the time of the passage of said act, and remained at said poor-house and were supported by said county until the said annual meeting of the board of supervisors of said county.

That, while said paupers were at said poor-house, they were supported exclusively by the county of Stephenson.

That, at the annual meeting of the board of supervisors of said Stephenson county in September, A. D. 1861, said board of supervisors, claiming that the respective towns were liable so to do under said act, passed a resolution requiring the several towns in said county to receive and support the paupers of their respective towns then in the county poor-house.

That, after the passage of said resolution, said board of supervisors caused to be served upon the overseers of the poor of said town of Freeport, and also upon the supervisors of that town, a notice requiring said town to receive and support the above named persons as paupers of the town of Freeport, or pay the expenses of the support of said paupers.

That such notice was served on or about the first day of October, A. D. 1861.

That said town of Freeport then refused to receive said poor, or pay the expenses of the support of said paupers, or either of them, and ever since has refused and still does so refuse, and that said paupers and each of them, since October 1st, 1861, to the time of the commencement of this suit, remained at the poor-house of said county, and were supported by said county of Stephenson.

That the bill for such support, attached to and filed with the declaration in this cause, is reasonable and just, if the said town of Freeport were chargeable with the support of said paupers.

That the poor-house of said county of Stephenson at the time said paupers and each of them were sent thereto, was situate in

the township of Silver Creek in said county, and outside of the limits of said town of Freeport, and ever since said paupers were so sent to said poor-house, said poor-house has remained and still is in said township of Silver Creek.

That several years before said paupers or either of them were sent to said poor-house, said Stephenson county adopted township organization, and ever since has acted under such township organization, and that said town of Freeport at the time said paupers and each of them were so sent to the poor-house was an organized town in said county of Stephenson, and ever since has so remained.

That, at the time said persons and each of them became paupers and were sent to said poor-house, they and each of them were legal residents of said town of Freeport, and were sent to said poor-house from and by the proper authority of said town, and when so sent to said poor-house were paupers properly chargeable upon said county of Stephenson.

That, if the foregoing facts establish the liability of said town of Freeport for the support of said paupers under said act, then judgment for the plaintiff is to be entered in the cause for the amount of the bill attached to declaration in this cause, in favor of the plaintiff, saving to each party the right to appeal or writ of error.

The court found the issues for the plaintiff, and assessed the damages at $1,274.05. A motion for a new trial was overruled, and judgment rendered for the amount against defendant. And the cause is brought to this court to reverse the judgment.

This action is based upon an act of the general assembly, approved on the 8th day of February, 1861; and is entitled " An act in relation to the poor of Stephenson county." It by the first section declares: " That each town in the county of Stephenson, from and after the annual meeting of the board of supervisors of said county, shall respectively pay the ex- penses of the support of the paupers residing in each town, and out of the treasury thereof, in the same manner and form as other town expenses."

The second section declares, that the county poor farm shall be kept in proper repair, with such improvements as may be required, at the expense of the county, under the supervision of the board of supervisors. That under such rules, regulations and contracts as they shall deem proper, the same shall be open to the reception of such poor persons as the town authorities may offer, subject to the provisions of this section. The third section declares, that the provisions of sections fourteen, fifteen and sixteen of the chapter entitled "paupers," of the Revised Statutes, shall apply to the several townships of the county, in the same manner they do between the several counties of the State. This act also amends the general law, so far as to require a residence of six months in any township in the county before such person shall become a charge on the same.

It is insisted that the agreement does not show that this act was adopted in the mode prescribed. The agreement states that: "said act was accepted by the electors of said county, according to the provisions of the third section of said act." It seems to us that this language will bear no other construction, but that the electors adopted the law as required.

The persons for whose support the county has sued, were residents of the town of Freeport, at the time they were sent to the county poor-house. And they had been in the poor-house more than two years prior to the annual meeting of the board of supervisors in September, 1861. And there is no dispute that they were, prior to the adoption of this law, a county charge, and the town of Freeport was not chargeable with their support. This then presents the question whether this law changes the liability of their support from the county to the township. The county and townships being municipal bodies, created for the purpose of aiding in maintaining the general police, and being under the legislative control, no question as to vested rights can arise, in the alteration or change of their franchises. These are under the legislative control, and may be altered, changed, abridged, enlarged or repealed, at the will of the general assembly. This being

true, the question arises as to the intention of the legislature when this law was adopted.

It seems to be manifest that it was designed, that, after the annual meeting of the board of supervisors in September, 1861, each town in the county should support its resident paupers. And this then naturally presents the question as to whether these persons are residents of Freeport. It is conceded they were residents of the county, and it is expressly agreed, that, at the time they severally became paupers, they were legal residents of the town of Freeport. Then did they, by being sent to the poor-house, lose their residence in that town, and become residents of the town of Silver Creek, in which the county poor-house was situated?

That this was not the design of those adopting the law, would seem to be manifest, otherwise they would, in terms, have declared, that the town of Silver Creek should support all paupers then in the county poor-house, and all such as should be sent there after remaining in the poor-house for six months. If by remaining there for six months, although chargeable to other towns, they acquired a residence so as to charge that town, the operation of the law would be to settle all paupers in the county on the town of Silver Creek. The various towns in the county have the right to send their paupers to the county poor-farm, and to pay the expenses of keeping them there, but, to give the construction contended for, they would only be liable for their support for six months, as after that time the town of Silver Creek would become liable. This is so manifestly unjust that such a construction will not be given to the law, unless its terms imperatively demand it, and such is not the case.

As a general rule, persons under legal disability or restraint, persons of non-sane memory, or persons in want of freedom, are incapable of losing or gaining a residence, by acts performed by them under the control of others. Thus, the residence of the wife or minor child usually follows that of the husband or parent. There must be an exercise of volition by persons, free from restraint, and capable of acting for themselves, in order

to acquire a residence. A person imprisoned under operation of law does not thereby change his residence. So of a lunatic legally confined in an asylum. As these acts are involuntary, there can be no presumption of the necessary intent to change the residence. So of *femes covert* and minors. And no reason is perceived why the maintenance of a pauper at the poor-house should form an exception to the rule. He is placed there by the officers of the law, and in pursuance of its requirements. The act cannot be said to be voluntary, but is induced from necessity. Inability for self support renders it necessary that the pauper should be supported as a public charge, and the law has designated what political division of the people shall be charged with the support, and has therefore given the body the means of controlling the acts of the pauper to the extent necessary to render it convenient for his support. So soon as he becomes a charge, and while he remains so, he ceases to be a free agent, but is in the hands, and, to a certain extent, under the control of the public officers intrusted with the execution of the poor laws. That persons acting under the legal authority of others, or not being capable of acting for themselves for the want of mind, do not lose or acquire a residence thereby, see *Payne* v. *Town of Dunham*, 29 Ill. 125; *Upton* v. *Northbridge*, 15 Mass. 547; *Reading* v. *Westport*, 19 Conn. 561; *Amherst* v. *Hollis*, 9 N. H. 107; *Winchenden* v. *Hatfield*, 4 Mass. 123; *Andover* v. *Canton*, 13 id. 547. By being removed to the county poor-house, these persons did not lose their residence in the town of Freeport, nor did they gain a settlement in the town of Silver Creek.

It has been repeatedly held, that, by a division of a town, or the annexation of a part to another town, a pauper still has his settlement in the portion of the town where he resided when he was sent to the poor-house. And, in such cases, after the division has been made, the pauper will be a charge to that town which, after the change, embraces the place of his residence or settlement at the time he became a pauper, and this, too, without reference to the place where he was afterward supported. *Oxford* v. *Bethany*, 15 Conn. 252; *Bethany* v. *Ox-*

*ford,* id. 550 ; *Brewer* v. *Eddington,* 42 Me. 541 ; *Yarmouth* v. *North Yarmouth,* 44 id. 352 ; *Southbridge* v. *Charlton,* 15 Mass. 248. These cases, in principle, fully dispose of this question.

We think, from the agreement itself, that it sufficiently appears that notice was given, after the annual meeting of the board of supervisors, to the proper authorities of the town of Freeport, to remove these paupers. This they failed to do, and the only inference which can be reasonably drawn therefrom is, that the town desired the county to support them, under the act, and for which the town intended to become liable.

The judgment of the court below must be affirmed.

*Judgment affirmed.*