## THE TOWN OF BRISTOL

*v.*

## THE TOWN OF FOX.

*Filed (on rehearing) at Ottawa January 20, 1896.*

1. APPEALS AND ERRORS—*when presumed, on appeal, that Appellate Court reversed on facts.* It must be presumed, on appeal to the Supreme Court, that the trial court correctly applied the law to the facts of the case, and that the Appellate Court reversed the judgment because it found the facts to be different from those found by the trial court, where no propositions of law were submitted to be held or refused by the latter court.

2. PAUPERS—*liability of town of original residence for pauper's support.* A town becoming liable to another town, under the statute, for the support of a pauper, (Laws of 1889, p. 217,) is not discharged from such liability upon the refusal of the pauper to return to the town so liable for the support. (CRAIG, C. J., dissenting.)

3. SAME—*poor officers have personal custody of paupers.* Persons, by becoming paupers, cease to be free agents, and pass, to a certain extent, under the control of the public officers intrusted with the execution of the poor laws.

4. SAME—*power of supporting town to remove pauper.* A town liable to another town, under the act of 1889, for the support of a pauper going from its territory into the latter, has the implied power, under said act, to remove such pauper back to its territory, though liability for support does not depend on such power of removal.

*Town of Fox* v. *Town of Bristol*, 45 Ill. App. 330, reversed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kendall county; the Hon. C. W. UPTON, Judge, presiding.

M. O. SOUTHWORTH, and J. M. RAYMOND, for appellant:

These paupers having become such within the statutory period, their town of settlement remains the town of Fox, and having continually, from thence hitherto, been objects of public charity, cannot gain a residence in the town of Bristol so that that town would become responsible for their support as the town of their legal settlement. The furnishing of aid to a pauper in need of relief

will prevent him from gaining a settlement. *Worcester* v. *Auburn,* 4 Allen, 574; *Oakham* v. *Sutton,* 13 Metc. 192; *Town of Freeport* v. *Board of Supervisors,* 41 Ill. 500; *Fayette County* v. *Bremer County,* 56 Iowa, 516.

The place of a pauper's legal settlement is liable for his support. *Tobey* v. *Madison,* 44 Pa. St. 60; *Saukville* v. *Grafton,* 68 Wis. 192; *Bremen* v. *Brewer,* 54 Me. 528; *Groveland* v. *Medford,* 1 Allen, 23.

If his settlement is found not to be the place where he resides, then the last place of his legal settlement is liable. *Tobey* v. *Madison,* 44 Pa. St. 60; *Voorhis* v. *Whipple,* 7 Johns. 89; *McCaffrey* v. *Shields,* 54 Wis. 645.

This liability is not defeated by the failure of the supervisors to make a contract for such support, nor the fact that the town where such pauper has a legal settlement is ultimately liable therefor. *Davis* v. *Scott,* 59 Wis. 604; *Mapes* v. *Supervisors,* 47 id. 31.

Removal of these paupers to the place of their legal settlement would not have been a deprivation of their liberty, within the meaning of section 2, article 2, of the constitution. *Weimer* v. *Bunbury,* 30 Mich. 210; Cooley's Const. Lim. 223; *Goshen* v. *Richmond,* 4 Allen, 458; *Bridgewater* v. *Plymouth,* 97 Mass. 382; *Endicott* v. *Hopkinton,* 125 id. 521; *Cambridge* v. *Boston,* 130 id. 357; *Goshen* v. *Stonington,* 4 Conn. 209.

A. C. LITTLE, for appellee :

Appellee was not, and is not, liable in this action, because the alleged pauper and her minor children were living in a foreign town and refused to return. *People ex rel.* v. *Superintendent of Poor,* 15 N. Y. 1; *Town of Ludlow* v. *Town of Weatherfield,* 18 Vt. 39; *Atkins* v. *Barnwell,* 2 East, 505 ; *Warren* v. *Inhabitants of Isliborough,* 20 Me. 442 ; *New Salem* v. *Wendell,* 2 Pick. 341; *People ex rel.* v. *Commissioners,* 17 Barb. 562; *Baldwin* v. *McArthur,* id. 414; *Knox County* v. *Jones,* 7 Ind. 3; *Farrington* v. *Inhabitants of Anson,* 77 Me.

405; *Backus* v. *Dudley,* 3 Conn. 568; *Brown* v. *Brown,* 4 id. 269; *Lyons* v. *Hadden,* id. 397.

Appellant, after notice to its supervisor that the appellee had furnished a dwelling house and was ready and willing to support and maintain the alleged pauper and her minor children, was not, as a matter of law, entitled to compensation for anything furnished the alleged pauper and her children. *Clark County* v. *Huie,* 49 Ark. 239; *Wilbur* v. *Inhabitants of Somerset,* 14 Mass. 396; *Middlebury* v. *Habbarton,* 1 D. Chip. 205; *Bennington* v. *McGennas,* id. 44.

There is nothing but statutory liability providing for support of paupers, in any event, and inasmuch as the statute makes no provision for a case like the one at bar there could be no liability. *Gibson* v. *Poor District,* 122 Pa. 557; *Mitchell* v. *Carville,* 12 Mass. 333; *Wilbur* v. *Somerset,* 14 id. 396; *Kellogg* v. *St. George,* 28 Me. 225; *Edwards* v. *Davis,* 16 Johns. 281; 9 Gray, 331; *Jones* v. *Wallingford,* 8 Vt. 224.

The tenement house of this woman was her castle. She sacrificed no right because she asked for bread, and without express statutory authority she could not be removed. *Town of Royalton* v. *Town of Westfairville,* 11 Vt. 438; *Town of Bethel* v. *Town of Tunbridge,* 13 id. 445; *Harland* v. *Pomfret,* 11 Vt. 440; 2 Bott's Poor Laws, 767.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This action in assumpsit was begun in the circuit court of Kendall county by the town of Bristol, against the town of Fox. A trial by the court, without a jury, resulted in a judgment for plaintiff for $222.20 and costs of suit. The Appellate Court for the Second District, on appeal, rendered a final judgment of reversal, but incorporated in the same a finding of facts, in conformity with section 87 of the Practice act, (2 Starr & Curtis, 1842,) and granted an appeal to this court upon a certificate of importance.

The action is brought under section 16, chapter 107, of the Revised Statutes, as amended by the act of 1889,

(3 Starr & Curtis, 937,) which provides: "If any person shall become chargeable as a pauper in any county or town who did not reside therein at the commencement of twelve months immediately preceding his becoming so chargeable, but did at that time reside in some other county or town in this State, it shall be the duty of the county or town clerk, as the case may be, to send written notice, by mail or otherwise, to the county clerk of the county in which the pauper so resided, or if he then resided in a town supporting its own poor, to the town clerk of such town, requesting the proper authorities of such county or town to remove said pauper forthwith, and to pay the expenses accrued and to accrue in taking care of the insane [same]; and such county or town, as the case may be, where such pauper resided at the commencement of the twelve months immediately preceding such person becoming chargeable as a pauper, shall pay to the county or town so taking care of such pauper all reasonable charges for the same, and such amount may be recovered by suit in any court of competent jurisdiction."

No propositions of law were submitted to be held or refused by the trial court, and hence it must be presumed that it correctly applied the law to the facts of the case, and that the Appellate Court reversed its judgment because it found the facts to be different from those found by that court. This is further shown by the fact that the final judgment of the Appellate Court contains a certificate of the facts as it found them.

It appears from the undisputed facts that both these towns are in Kendall county, and each supports its paupers. One Arthur Bell, with his family,—a wife and four small children,—was a resident of the town of Fox prior to and until about August 18, 1889, when he moved into the town of Kendall, in said county, where, in January following, a fifth child was born. The family remained in Kendall until about the 18th of March following, and then removed to the town of Bristol, where they have

since resided.  On the 16th of May, Bell was drowned, leaving his widow, Sarah, and the five children, without means of support.  She at once applied to the supervisor of the town of Bristol, who, as overseer of the poor, after notifying the authorities of the town of Fox, furnished her with necessaries for herself and children, from time to time, prior to the 15th day of August, 1890, which were paid for by the town of Fox, and this suit is brought to recover money paid for such support furnished after that date.  The Appellate Court found the facts as to this claim to be, that all necessaries furnished the said Sarah Bell and her family before the 15th day of August, 1890, by the appellant, were paid for by the appellee; that before that date appellee had provided for her and her family a suitable habitation in the town of Fox in which to live, and offered to remove her to said habitation and there support her and her family; that said Sarah Bell refused to be so removed, and threatened with prosecution any one who should attempt to remove her; that before that date appellee duly notified appellant of its offer to so remove and support her in the town of Fox, and that appellee would not pay for any necessaries furnished Sarah Bell or her family while she remained in said town of Bristol; that none of the necessaries or expenditures so furnished said Sarah Bell and made the basis of this suit were furnished prior to the 15th of August, 1890.

Manifestly, the finding and judgment of the Appellate Court are based upon the fact that Mrs. Bell refused to allow herself and family to be removed to the town of Fox, and the notification by that town to the town of Bristol of such refusal and that it would no longer be responsible for her support.  No other fact necessary to the plaintiff's right of action is controverted by the defendant or found adversely to it by the Appellate Court. Upon the mother was cast the duty of supporting not only herself, but her infant children.  Being unable to do

this, she was compelled to apply to the public authorities for relief, as was shown in our former opinion, and thus became, together with her children, in contemplation of law, a pauper. (*Taunton* v. *Biddleborough*, 12 Metc. 35; *Garland* v. *Dover*, 19 Me. 44; *Clinton* v. *York*, 26 id. 167; *Green* v. *Brookfield*, 3 Greenl. 136; *Town of East Haddam* v. *Lyme*, 14 Cow. 394; *Northfield* v. *Roxbury*, 15 Vt. 622.) That this family became a charge, as paupers, in the town of Bristol, was admitted by the defendant (the town of Fox) by its paying all the expenses incurred by the former for their support prior to August 15.

The sole question in the case therefore is, was the town of Fox discharged of its liability for the support of this family by its offer to remove them to a suitable habitation within its own boundaries and there provide for them, and the refusal of the mother to be so removed, threatening the officers with prosecution if any attempt was made to do so. Most of the argument for and against the proposition is directed to the inquiry whether or not the defendant below had the right, under the statute, to remove the paupers against their will. Counsel for appellee insist that its officers having provided suitable support for the family in its own town, to which the paupers refused to allow themselves to be taken, and the statute making no provision for their removal, (except by their consent,) its liability to the plaintiff ceased. The contention, broadly stated, is, that a county or town becoming liable to another for the support of its paupers under section 16, *supra*, is discharged from that liability upon the refusal of the pauper to return or consent to be taken back to its own territory,—and this, for the reason that it has no power of removal against such consent, and has a right to say where and how it will provide for the support of its poor. On the other hand, it is insisted that the statute, by fair and necessary implication, makes it the duty of the county or town so liable, to remove the paupers upon proper notice, and that the statute itself is

a sufficient warrant and authority of law for such removal, with or without the consent of the pauper, and therefore the liability continues until removal.

In disposing of this controversy in our former opinion we said: "The statutes of this State, while requiring the town of settlement of the pauper to remove him or her from the town in which he or she may become chargeable as a pauper, and to reimburse such town for the expenses incurred for maintenance prior to the removal, unlike the statutes in many of the States, provide no way for the judicial ascertainment of the pauperism and for procuring a judicial order for the removal. It is, however, clearly contemplated by the statute that the removal shall be made and the town in which the pauper becomes a public charge relieved therefrom, and the burden is by law cast upon the town where the pauper had resided and had his or her place of settlement at the beginning of the twelve months next preceding his or her becoming a public charge. It is also clear that the burden of removal, upon proper notice being given, is upon the town where the pauper had such settlement. It is by law the clear duty of the town or political subdivision charged with the maintenance of the poor in which the pauper may be, to provide the necessary support while the pauper is domiciled in such town, and the town or political subdivision chargeable with the support of the particular pauper is required to pay to the town furnishing the same the expense of such support, and, the proper notice having been given, it is expressly provided that an action may be maintained therefor. Moreover, the right of the authorities of the town legally chargeable with the support of the pauper to remove him or her is clearly recognized by the statute. And so it was said in *Town of Freeport* v. *Board of Supervisors*, 41 Ill. 495: 'Inability for self-support renders it necessary that the pauper should be supported as a public charge, and the law has designated what political subdivision of the people shall be charged with

the support, and has therefore given the body the means of controlling the acts of the pauper to the extent necessary to render it convenient for his support.   So soon as he becomes a charge, and while he remains so, he ceases to be a free agent, but is in the hands, and to a certain extent under the control, of the public officers entrusted with the execution of the poor laws.'   Without pursuing the subject further, we are of opinion, the fact of pauperism of Mrs. Bell and family being established, it became the duty of the authorities of the town of Fox, upon proper notice, to remove them from the town of Bristol."

Recognizing the importance of the question, we have carefully reconsidered it in the light of the authorities cited on the rehearing, and are still of the opinion that this is the reasonable and only practicable construction to be placed upon the statute.   It is true that cases cited by counsel for appellee hold a forcible removal, under somewhat similar statutes, wrongful.   *Backus* v. *Dudley*, 3 Cow. 568, is relied upon as a leading case to that effect. That was a suit by paupers for forcibly removing them from the town of their actual residence to that of their settlement, and three of the five judges held the removal actionable.   In the dissenting opinion of BRAINARD, J., concurred in by BRISTOL, J., it was held that, being paupers, the plaintiffs were not entitled to set up their choice against those whose legal duty it was to support them; and this view is in harmony with the decision of this court in *Town of Freeport* v. *Board of Supervisors, supra.* Other cases referred to are entirely distinguishable from the one under consideration in view of the statutes and state of facts under which they were decided, or are in conflict with the language above quoted from the *Town of Freeport case.*   Suppose Mrs. Bell had been a woman of unsound mind, (as her unreasonable conduct, unexplained, would indicate she might have been,) would her refusal to accept the offer of support in the town of Fox have excused it from removing her?   Suppose she, as well as

the father, had been dead, or that she had abandoned her children and they had objected to being removed; would it be contended that the proper authorities of the town of Fox would have been powerless to take them back? It may be said, in such case the mother and children would not be *sui juris*,—she on account of mental unsoundness, and they because of their infancy. But these disabilities are only additional ones to that of being paupers. So soon as they became a charge, and while they remained so, they ceased to be free agents, but were in the hands, and to a certain extent under the control, of the public officers entrusted with the execution of the poor laws. *Town of Freeport* v. *Board of Supervisors, supra.*

Having the right, under the statute, to remove these people, even against their consent, as we think it had under the facts certified to us by the Appellate Court, and failing to do so, the town of Fox was not relieved from its liability to pay the necessary expenses "incurred" by the town of Bristol in taking care of them, and on this ground we think the Appellate Court erred in holding the defendant not liable in this action.

But there is another theory upon which we think the liability of the appellee may be based. Suppose it be admitted that no authority of law exists for the forcible removal of these paupers. Upon whom must the consequent burthen fall? It seems to us that, unless it can be said that Mrs. Bell and her children ceased to be persons chargeable as paupers in the town of Bristol, upon the refusal of the mother to submit to a removal, the liability of the town of their settlement to pay for their support did not cease because they were not, or even could not be, lawfully removed. We think it clear, also, that the mere fact that the mother refused to return to the town of Fox did not render her and her children any the less paupers. She and her children were lawfully residing in the town of Bristol at the time they were overcome by the misfortunes which made them paupers, and section

15, chapter 107, *supra*, casts upon that town the duty to "relieve and support them." But as they did not reside there at the commencement of the twelve months immediately preceding their becoming paupers, but then resided in the town of Fox, the latter became liable to pay for "the expenses accrued and to accrue" in taking care of them, upon notice, etc. Stated in another way, it was the duty of the town of Bristol to furnish the support and notify the town of Fox, and it was the duty of the latter to remove the family and pay all expenses incurred up to that time as well as those which might afterwards be incurred. We do not think it can be seriously insisted that these duties terminated with giving notice and paying expenses to that time. Certainly, if, on account of sickness or other sufficient cause, they could not be removed, the duty to provide for them and the liability to pay therefor would continue, just as before.

It is to be observed, in this connection, that the Appellate Court does not find the fact to be that the town of Fox informed the mother that it would not pay for her support if she remained in the township, but simply upon her refusal it notified the authorities of the town of Bristol. In our opinion, the fact that the removal was not made because objected to by the mother, in no way affects that duty and liability. The paupers were, by law, chargeable to the town of Fox. The duty of supporting them while residing in Bristol was imposed by the statute upon the town of Bristol, with the right over to recover from the town of Fox. As we construe this statute, the town of Bristol was legally bound to provide the necessaries of life for this woman and her children while they resided there, and the town of Fox (where they properly belonged) was legally liable to compensate it for such expenditures. Therefore, if it were true that the town of Fox had no legal power to remove them, it would have no right to visit the consequences of that inability upon the town of Bristol. It is not pretended that the refusal

to be removed was in any sense attributable to the town of Bristol. It was not its duty, under the statute, to remove them, and certainly it was clothed with no more power to do so than the town of Fox, whose duty it was to remove them and pay for their support. And we repeat, unless it can be said that the town of Bristol would have been justifiable, under the law, in refusing to provide food, clothing and shelter for these helpless children, and incidentally their mother, we cannot perceive upon what principle of law or justice the town of Fox can be allowed to say, "We will not pay for these necessaries of life, although we are chargeable with them, because the mother has refused to be removed to the place we have provided for her." The whole theory of the contention of the defendant in this case seems to be, that notwithstanding the law has cast the burthen of providing for these paupers upon it, yet, inasmuch as by her obstinacy the mother will not allow it to provide that support at the place and in the manner it desires to do so, it can shift its burthen upon the town of Bristol, which has only incurred a temporary liability, under the law, by reason of the misfortune or accident of having them resident in that town at the time they became chargeable as paupers.

The judgment of the Appellate Court will accordingly be reversed and that of the circuit court affirmed.

*Judgment reversed.*

Mr. CHIEF JUSTICE CRAIG, dissenting.

Mr. JUSTICE CARTWRIGHT took no part in the consideration of this case.